Argument is not to be seen, 15 minutes per side. Mr. Subaraman, you may proceed for the appellate. May it please the court, my name is Mahesha Subaraman. It is my privilege to represent Joseph Fortin. I've reserved five minutes of rebuttal time. This case is about the improper appointment of the administrative law judge who denied Mr. Fortin's claim for Social Security benefits, ALJ Virginia Herring. Nancy Berryhill was not properly serving as acting commissioner when she appointed ALJ Herring, and Ms. Berryhill exceeded her limited constitutional and statutory authority in appointing ALJ Herring. Now we raise six separate arguments on this point. To rule in Mr. Fortin's favor, the court need only affirm one of these arguments. By contrast, to rule in the government's favor, the court must reject all six arguments. And in doing so, the court must effectively rewrite the Appointments Clause, the Federal Vacancies Reform Act, and vast amounts of settled appointments law, including Marbury v. Madison. With that in mind, I'm just going to stop there and see if the panel has any questions. When was this first brought up? I'm sorry, Your Honor? When was this first brought up? When you filed a case or when your client lost? This was first brought up in the district court on remand from the original Ramsey decision, which included a group of cases. Mr. Fortin's case was among them. This court held that Mr. Fortin, among others, did not have to exhaust Appointments Clause claims before the agency in order to raise them in district court and thus remanded to the agency for a new hearing in front of a properly appointed ALJ. ALJ Virginia Herring held the hearing, denied benefits. The case was appealed to the district court. In the district court, Mr. Fortin raised these Appointments Clause and FVRA claims. If we were to rule in your favor, how many conflicts would we create with other circuit court decisions? You would only create two conflicts, Your Honor. It depends on which argument that you favor. Okay, because we don't have to rule in favor of all. That's right. The only two arguments that have essentially been settled by other circuits are the question of whether or not under this statute, the FVRA, the president has to personally direct the appointment of an individual. That's the Eighth Circuit's rule against you on that. That's correct. I just want to tell you at the outset, I'm reluctant to create conflicts with other circuits, particularly on an issue like this, and I know we have the authority to do it, but I'm just reluctant to do it, and your burden's a little bit higher, I guess, too. We don't have to file the Eighth Circuit on us, but you've kind of convinced me that they're wrong, and they're really wrong. Well, Your Honor, I'm happy to make the attempt, but respectfully, in some ways, at least on the direction issue of whether President Trump had to in some way, shape, or form indicate that he wanted Barry Hill to serve as acting commissioner, the court can rule on the constitutional question. There's no conflict posed with the Eighth Circuit's decision because the Eighth Circuit only addresses the statutory interpretation question. I'm sorry, go ahead. I understand that. In some ways, I think that the constitutional picture here is even clearer than the statutory analysis. What other issues do we have a conflict if we rule on? The other issue would be the 210-day issue or tolling provision issue. Which circuits have ruled against you on that one? The Eighth Circuit, the Fourth Circuit, and the Fifth Circuit. But, Your Honor, once again, we have claims that have not been decided by any circuit, for which this court would probably be, unless some other circuit were to speak first, this court would be the first to speak on them. Respectfully, I think the non-direction problem is a particularly important issue because all of the evidence that we present in terms of interpreting the plain text, interpreting the founding era history, looking at what Marbury v. Madison has to say about appointments, and there needing to be an open, unequivocal act of the president. All of that favors our understanding that President Trump, in some way, shape, or form, had to affirmatively establish that he wanted Nancy Berryhill serving as acting commissioner if she was to be appointed as acting commissioner during his administration. The government's brief doesn't argue anything to the contrary. They have no argument based on text, no argument based on history, no argument based on precedent. Instead, they come up with this 11th hour theory about annexation of offices, something they did not argue to the district court and is arguably forfeited as a result. But even if the court were to look at that theory, that theory carries with it even greater constitutional problems because it would require this court to essentially contradict the principles that the Supreme Court articulated in Weiss v. United States, which it said limit when Congress can annex a new office to a preexisting office. One of those principles being that the preexisting office has to be one that has already been appointed by the president with the Senate's consent. And Ms. Berryhill, her preexisting office of deputy commissioner of operations, was not appointed by the president with the Senate's consent. Her position was deputy commissioner of operations. Was that an inferior office? That was an inferior office, Your Honor. Does the government concede that? Your Honor, the government has not disputed that at all, and I don't see how it could because the deputy commissioner of operations position is a significant exercise of a policymaking authority and administers significant functions of the agency under the direct supervision of the commissioner. You're not really saying much about whether Berryhill's appointment as acting commissioner was legally appropriate and whether she had authority to make the appointment that she did while she was there as acting commissioner. You're just speaking in these broad strokes that really don't explain the basis for her legal authority or why she didn't have the legal authority. Maybe you could address that a little bit. I'd be happy to, Your Honor. Let's assume for the moment that the court were to conclude Ms. Berryhill was properly serving as acting commissioner. She still didn't have the authority to appoint the ALJ here, and we know that for at least two reasons. Before you get into that, was she there legally appointed as acting commissioner or not? No, Your Honor, she was not. When the appointment in question was made? The appointment in question was made effectively on January 21, 2017. That was when the offices of acting commissioner of Social Security and deputy commissioner of Social Security were vacant. Under the terms of the Obama order of succession for SSA, which was issued in December of 2016, both of those positions had to be vacant before anyone could be elevated to the position of acting commissioner under the Federal Vacancies Reform Act. This office was filled during the Trump administration, and one would expect that if an office becomes vacant and gets filled during a particular president's administration, that president should be the one who is doing the appointing. Yet according to the government, President Obama could effectively appoint someone after his term in office ended during the Trump administration through this carryover effect of an executive order. The problem is, under your argument, the appointment would always have to be made by an acting commissioner who was herself appointed and made the appointment that she made under the same president. In other words, if the presidential term expired and the vacancies still needed to be filled, an acting commissioner, under your argument, couldn't fill it unless that person were there both under the same president, both for her appointment and the appointment of the ALJ that needed to fill the position. If we follow that to the logical conclusion, ALJ appointments would have to remain vacant if there were only an acting commissioner there for an extended time for whatever reason. Your Honor, let me speak directly to the issue of needing a properly appointed commissioner in order to appoint ALJs. Your Honor, the appointments clause is designed to engender the president's timely submissions of nominations to the Senate that the Senate then confirms. Now, when President Trump took office in 2017, he named a slew of individuals to various positions in the government. For example, he named Linda McMahon to be commissioner of the Small Business Administration, an agency no less important than... I hate to interrupt you, but before you go too far down that line of argumentation, you still haven't explained why the acting commissioner, Barry Hill, was not properly appointed at the time that she made or affirmed this ALJ appointment that we're talking about. You're kind of talking over the problem because you're not really addressing the facts of our specific case. Well, Your Honor, let me address that directly. The reason why Nancy Barry Hill herself was not properly serving when she issued the ALJ ratification in July of 2018 is because President Trump made no affirmative action, no open unequivocal act to direct her acting service, one. And two, when she was... In July of 2018, she was serving ostensibly under the Federal Vacancies Reform Act under what the government terms a springback provision that enabled her to return to that position. The problem with that, Your Honor, is that there was a gap period between when her acting service expired under the Federal Vacancies Reform Act and when she was revived by the Saul nomination, according to the government. Now, during that gap period, she essentially reinstated herself as deputy commissioner of operations so that she could maintain essentially her place in the order of succession and thus be revived. Who would have been the acting commissioner under your theory? Under this particular argument, the acting commissioner would have been the person below Ms. Barry Hill in the list that President Obama... That Obama did? The Obama succession list? Yes, under the Obama succession. This is the third argument. I thought you said that list was invalid, that was unlawful. Well, that's our... It's not binding on Trump, I guess. That's correct, Your Honor, that's our first argument. We order our... I know, but then you're arguing that it applies here because you'd go to the next person. So it either applies or it doesn't. So let me clarify that. We kind of have sequenced our arguments in order of if the court doesn't buy this, then here's the next argument. So if the court doesn't buy our argument that the Obama order couldn't be effective during the Trump administration of its own accord, if the court doesn't buy that Nancy Barry Hill didn't have that authority... I understand. ...then we get to this third argument, which is how could she reinstate herself as deputy commissioner of operations when you need a commissioner of Social Security for that to happen? And by the way, federal appointments law, 5 U.S.C. 3593, expressly requires that. The district court, in its opinion, says, Mr. Fortin seems to have a point here that the statute would apply, but I just don't feel it does. And that, respectfully, isn't how statutory interpretation works. I do have to admit you have established some difficult issues for us to resolve. Well, I appreciate that, Your Honor. And again, I'm not, for a moment, pretending that these are easy issues to decide. There's a lot of law on the table. There are a lot of difficult questions to grapple with. But now is the time, respectfully, for the court to grapple with them for at least two reasons. One, we have an active commissioner of Social Security. We're not operating under any acting administration. So if the court finds there is a problem, the administration can fix it without running into further problems. And secondly, we are before a presidential election. And I think clarity before an election that might result in a transition of power is important so that administrations going forward can know what their obligations are. I agree with you there. Your Honor, I... If we rule in your client's favor, what does that mean from a practical standpoint? Does that mean that all of the decisions of the ALJ who oversaw Mr. Fortin's case, that all of those decisions in all those cases would be voided and rendered null and void? Because if this argument would apply to Mr. Fortin, the argument might apply to a number of other cases. Is that what we're looking at? That's a perfectly fair concern. I'm over my time, but if you'll give me a moment to answer that question. It's a little bit of a developed answer. But it's important to recognize that a ruling in Mr. Fortin's favor would not automatically void all decisions by ALJs for all time or anything like that. And the reason why is because appointments clause claims, you have to raise them in a timely manner, and they have to go through a process. So if you start at the front end, what do you need in order to raise a successful appointments clause claim? You first need to have an adverse ALJ decision. Not every Social Security claimant has that. A lot of them are granted benefits. Those decisions would not be upset. Then you need to have a timely appeal to the appeals council. Not every claimant appeals to the appeals council. Then you need to have a timely district court proceeding, and not every claimant who is denied benefits goes to the district court. Then you need to have the claimant lose on the merits of whatever objections they may have to the ALJ decision in principle. And not every claimant does. And then finally, you need to have a timely raised appointments clause claim of this particular nature. I would submit that the number of cases that fit all five of those criteria is exceedingly small in nature. But the importance of finding in Mr. Fortin's favor is that it serves to discipline the executive branch and ensure that it is living up to the principles that the appointments clause establishes in this context. That's why the Supreme Court said in the Bond case that these types of claims are principally raised in the individual context because convenience tends to lead executive agencies and the political branches generally to skirt over the difficult work that the appointments clause might otherwise require. Are we sure that some sort of collective action or class action for declaratory judgment couldn't be brought? The way you're positing is every claim has to be brought individually. And do we really know that that to be the case? Well, Your Honor, as far as I know, when it comes to it, there has never been a class action appointments clause claim as far as I know. But the other way that the court may look at this is to say, the Supreme Court has said in the context of the appointments clause generally that we want to incentivize these claims. That's part of the reason why in its cases like Lucia and like Carr, it rejected application of the de facto officer doctrine. If the court had wanted to just say these appointments clause claims, they're important, but they can mostly be washed away through the de facto officer doctrine. The court didn't do that. So it clearly wants these claims to move forward. And I think it's possible for the court to craft remedies that say, look, for the individuals who bring these claims in the first instance, who are essentially brave enough to do it, we'll give them the bounty of having successfully raised that claim, which is a new hearing in front of a properly appointed individual. But then perhaps for later hangers-on who are just trying to capitalize on a decision, maybe we don't afford that bounty. All of those questions go to remedies, Your Honor. And the district court didn't rule on remedies here. The government has asked for remand. We argue that the law is relatively clear. Excuse me, counsel. I think we have your argument in hand, and I think we can stop at this point, if you don't mind. Not a problem, Your Honor. Thank you. I appreciate your patience. Thank you. Good morning, Your Honor. May it please the court. Anna Stapleton on behalf of the government. I'd like to start by just taking a step back and sort of walking through the basics of the issues that are presented here. So through the Federal Vacancies Reform Act, Congress empowered officials other than those appointed by the president and confirmed by the Senate to temporarily perform the duties of vacant offices. That is consistent with the Supreme Court decision in Eaton that allows for acting service by those who have not been confirmed by the Senate. Acting Social Security Commissioner Nancy Berryhill acted pursuant to that authority under the FVRA when she appointed the agency's ALJs. The plaintiff is now, of course, challenging the validity of that appointment on a variety of statutory and constitutional bases. Judge Griffin, as you canvassed for us earlier, the Fourth, Fifth, and Eighth Circuits have already rejected many of those challenges, and none of them can succeed here. So ultimately, because Acting Commissioner Berryhill was properly designated to take on acting duties, was serving in accordance with the FVRA's timing provisions, and properly exercised her authority to appoint the agency's ALJs, we are asking the court to affirm the district court's grant of summary judgment to the government on the basis that the ALJ's appointment remains valid. Her original position of Deputy Commissioner of Operation, is that an inferior office? Your Honor, I don't think that's something that's established in the record here. It might make a difference if she's an employee or an inferior officer. Your Honor, I'm not sure that it does, and for two reasons. One regarding the statute, and the other regarding the issue that's actually presented here. With respect to the statute, the FVRA Section 3345 doesn't have a particular requirement that someone be an inferior officer, but more importantly, the issue that's presented here is whether the position of Acting Commissioner is its own office that requires a new appointment. And our position is that it is not. So the FVRA allows an existing official to have their duties temporarily expanded to include the duties of a vacant office. It's not a new office. Acting Commissioner is not, for constitutional purposes, an office that requires its own appointment. And that's why there's no constitutional impediment to the validity of President Obama's 2016 succession order. So as the Eighth Circuit held, that succession order satisfies the FVRA requirement under 3346 that the President direct a person to serve in an acting capacity. And then there's no additional constitutional requirement that there be a new appointment. We would point the Supreme Court's decision in Weiss permitting that expansion of duties. I also want to point out a statutory source, 5 USC 5535, that makes clear that a person who takes on acting duties retains the salary of what is referred to as their regular office. So the person never vacates the office. In this case, Acting Commissioner Berryhill never vacated her position as DCO. And for that reason, she also never had to be reinstated. She remained DCO throughout this period. During some periods when it was permitted by the FVRA, she was also carrying out the duties of the vacant Commissioner office in an acting capacity. Just turning also to the point of the timing, I know that there were some questions about that. So the 4th, 5th, and 8th circuits have made clear that under Section 3346A, there are two independent periods of acting service. So one is under A1, the 210-day period that begins at the time of the vacancy and, of course, ends 210 days thereafter. There's a separate and independent period of service under A2 that begins when a first nomination is made to permanently fill the vacancy. And ends when that nomination is no longer pending before the Senate. At the time that Nancy Berryhill, Acting Commissioner Berryhill, made the appointment of the agency's ALJs, she was serving in an acting capacity under A2. There was a pending nomination. There is no problem with the fact, as the 4th, 5th, and 8th circuits held, there's no problem with the fact that that nomination was made after the expiration of the initial 210-day period. The text of the statute makes clear that the two periods are independent. So the fact that a nomination was made is what triggers the second period of service under A2. It is not in any way conditioned on the expiration of the period under A1. Okay. Did the other circuits rule that she went back to her former position after the initial 210 days expired? Did they address that? No, Your Honor. So that question was not raised before any of those circuits. But to be clear, she did not have to go back to her prior position because she never vacated the prior position. Okay. How do we know that? What authority do you have for that, that she continued in the position of the deputy commissioner of operations even though she was serving as the acting commissioner? So that is standard practice, Your Honor. I mentioned the statute regarding a person who takes on acting service retaining the salary of their regular office. Retains the salary but also retains the position? Yes, Your Honor. So I would also point to the OLC memo that we cited in our brief. I believe it's cited at page 23 of our brief that discusses an acting director of national intelligence. And the question discussed in that memo is whether the acting DNI had to give up a position as a director of the National Counterterrorism Center. And that memo is very clear. In the ordinary case, a person does not give up their existing office. They simply, what happens under the statute is a temporary expansion of the duties of that office to include the duties of the vacant office. In that memo, there's a description of a particular problem with the DNI. There is a particular statute that bars the person who is the director of the National Counterterrorism Center from also serving as the director of national intelligence. So in that case where there's a particular bar, that person had to temporarily give up the duties of the director of the National Counterterrorism Center. But even having given up those duties, he didn't actually vacate the office. And I think all of that just goes to show that the ordinary case, the baseline expectation across the board, is that the existing office is not vacated. So the person goes back to the old position once their successor is appointed? Is that what it is? Director Seller, I don't mean to be nitpicky with words, but we would say that they didn't so much go back to the old position as they didn't ever vacate the position. So what happens when a permanent appointment and confirmation is made to the vacant position is that the person who was serving in an acting capacity gives up the duties but sort of remains in their regular office and so does not have to sort of return or be reinstated to it. Not go back to private, whatever they were in before. They return. So in this case, yes, Nancy Berryhill was the deputy commissioner of operations. She remained so while she had acting service or was temporarily undertaking the duties of the commissioner and then remained GCO when her acting service ended. I did also want to emphasize, as Judge Clay was pointing to earlier, the real practical problems that would arise if the system of acting service under the FVRA was to be interrupted or not permitted. So the process that occurred here, President Obama's succession order, vacancies arising at the start of a presidential administration, that succession order being deployed to allow for acting service, that is completely normal, completely ordinary. It happens. I can't speak for certain that every administration changed, but it is sort of the standard process. And to disrupt that process would mean that at the beginning of a new administration, a president would be under tremendous pressure to fill those vacancies, vacancies across the federal government. Now, of course, the president eventually has to make a nomination, but the president can't act unilaterally in permanently filling these positions. The president makes the nomination, but the Senate must make a confirmation. And it is that process, which can take a great deal of time, particularly at a point of transition when many new nominations need to be made, that Congress was thinking of when it created the Federal Vacancies Reform Act by providing for this system of acting service to allow the time that's necessary for the constitutional requirements of appointment and confirmation to the permanent positions to be filled. I think if the court has any further questions, I, of course, am happy to answer them. I have none. Apparently not. All right. In that instance, I think the court for its time, we would ask the court to affirm. Thank you for your argument. Do we have any rebuttals? I do, Your Honor. All right. So I just want to hit on two basic themes during my rebuttal time here. First, I want to speak directly to Judge Griffin's question about whether Barry Hill, as Deputy Commissioner of Operations, was an inferior officer. We expressly argue that she was an inferior officer. On page 41 of our opening brief, page 16 of our reply brief, we argue this in front of the district court. The government did not dispute our characterization of her in that capacity at all. They had no response to it. I guess they didn't today either, did they? No, they really don't. The only argument that the government has with respect to this third claim about did she properly return to her old job before being revived back to acting commissioner, is that she never vacated her position in the first place. But the problem is they don't cite any source of law to support that proposition. And we cite three separate sources of law that point to the exact opposite conclusion. So the first source of law we point to is the incompatible officer doctrine. And as Justice Rehnquist, when he was serving in the Attorney General's office, pointed out in a memo in 1970, the assumption by an officer of a new office which is incompatible with the one he is holding has the effect of vacating the first office. Nancy Berryhill couldn't be acting commissioner and deputy commissioner of operations at the same time. She couldn't be supervisor and supervisee. Nor could she do both of those jobs at the same time. And part of the reason we know that is because during the period of time that she was serving as acting commissioner, Mary Horne served as acting deputy commissioner of operations. You can't have an acting deputy commissioner of operations unless the position of DCO is vacant. And then on top of that, you have 5 U.S.C. 3593B, which establishes the necessity of reinstatement of individuals in the senior executive service, like Berryhill, when they are appointed by the president to any civil service position outside the senior executive service. And there's no dispute here, as far as I can tell, that that's exactly what happened when Nancy Berryhill was elevated to the acting commissioner position. And the district court acknowledges this at page ID 1014 of the record. Now, the final point here is the government says it's standard practice to look at this OLC memo. And I asked the court, do look at the OLC memo. This is 43 op OLC. It's a November 15, 2019 memo about designating an acting DNI. In that memo, the executive branch says, an acting officer will ordinarily perform the duties of both his office and the vacant office. That didn't happen here. Ms. Berryhill did not do the job of DCO and acting commissioner at the same time. Instead, she staffed out all of those responsibilities to Mary Horn. And respectfully, we submit that's vacating the position, which then means if she wanted to return to that job as a matter of statute, as a matter of the incompatible officer doctrine, et cetera, et cetera, that she needed to be formally reinstated by some head of department because that's what the Constitution requires for inferior officer positions. And no head of department existed at that point in time to do that thing. So I think that disposes of the government's attempt to essentially get around a fundamental problem with the way that Ms. Berryhill's acting service transpired here. And all the government... Excuse me, not necessarily exactly. I guess the government's response might be that even though other people, staff people, were performing functions of the office, that Berryhill still had the legal authority for the position. And even though they're not citing chapter and verse of any case citations, they're claiming that longstanding governmental pattern and practice establishes or has established their argument over time. I think that would be their argument. I mean, I'm not saying how we as the court should come out on that, but I don't think it's... Judge Clay... Wait, wait, wait, wait, wait, wait. We both can't talk at the same time. If you'll let me finish what I'm saying. So... I lost my train of thought. Okay, go ahead, counsel. Judge Clay, I apologize. I didn't mean to interrupt you. You just see a ticking clock and you tend to worry a little bit. To speak to the point that you're making, I understand that the government's practice in this context may lead it to believe that acting officers continue in their old positions. But the problem is when you look at the sources of law that govern this context, even the executive branch's own memoranda governing the subject, one of the opinions of legal counsel that we cite in their brief, One Op OLC 28, it's a 1977 opinion, in which they deal with the incompatible officer doctrine. And they say an individual could not serve as both supervisor and supervisee. In that case, you were dealing with an individual who had been elevated to a higher position of council member, and at that time he was holding the position of acting executive director. And the Office of Legal Counsel said he can't be an acting executive director if he's also a council member who's charged with supervising what the acting executive director would do. So we submit that the practice of the executive branch points in the exact opposite direction, and that makes the government's failure to cite any governing source of law here, despite all of the citations that we provide in support of our arguments, problematic. With the court's permission, I'd like to just make one last point regarding the practical problems that opposing counsel alluded to in her remarks. We recognize that the appointments process is not the easiest process in the world for any president or for any Congress to navigate, but it is an important one for purposes of accountability. And so if you were to just look at the argument that we make about the president needs to, by open and unequivocal act, appoint the acting officers who fill vacancies during his administration. If a president felt that the best way for that to happen was to have all of his predecessors' orders of succession operate automatically under his administration, the president could do that with a single sentence signed the first minute he's in office saying, I hereby ratify, adopt as my own, all of these previous executive orders. That way the president is taking full accountability for every appointment that is made under those previous orders in his administration. But respectfully, we submit that no president would ever sign such an order because their response to being asked to do so would be, I don't know who's going to be appointed under that blanket grant of autopilot appointment authority. I want to make sure that the people who are filling these very important positions are in fact suited to the job. And that's ultimately what's lacking from the government's analysis here. They're not asking the question, what is the appointments clause ultimately meant to do? It's meant to ensure that the people who fill these positions, even on an acting basis, are vetted by the executive, are vetted by the Senate. And far from assuring this court that Ms. Berryhill was ever vetted in terms of serving as acting commissioner, they don't present one iota of evidence that the Obama administration vetted Ms. Berryhill or that President Trump vetted Ms. Berryhill before she took this very important position. And we think that that's particularly problematic given the evils that the appointments clause was drafted to address. Unless the court has any further questions, we're happy to rest on our briefs. I thank the court for its patience. And Judge Clay, again, I apologize for interrupting you. All right. The apology is accepted, and thank you for your arguments, and the case is submitted. The court may call the next case.